This is an appeal number 2007-1133, Diego Inc v. Audible Inc. Mr. Kienel, good morning, welcome, please proceed. Almost your afternoon, Mr. Kienel, D. L. A. Piper for Appellant, Audible. With me today is the Associate General Counsel, Contessa Nairi at Audible. General, I'll start with discussing what we believe was a clear error of law committed by the District Court. It did so in not following VIEW Engineering, this Court's specific decision in VIEW Engineering. More specifically, what the District Court did was shift the burden to Audible to show that Digio had not performed an appropriate pre-suit investigation, rather than leaving that burden with Digio where it belonged. Can I ask you, just to help me understand the procedural history here, when your opponent moved for the voluntary dismissal, you opposed with a number of arguments, and one of them, and I think it was basically just two pages in a brief, was a reference to your claim for relief under Section 285 and the need for discovery and briefing on that issue. And I didn't see in the record below anything other than after the briefing on the voluntary dismissal motion, there was the opinion from the Court, which is the basis for this appeal. So you never really had the briefing on the Section 285 motion, and of course you didn't have the discovery on the 285 motion. Am I right? You're right, Your Honor. However, one note for the Court to consider. The 285 issue came up twice. It came up in connection with our summary judgment motion, which Judge Robart of the District Court granted in part, in large part. And then we renewed it again, of course, when the voluntary dismissal was sought. And it's at that time that we said to the Court, since you're cutting off our opportunity here to go to trial, at least give us some discovery here, because we can see now that we have a very good 285 claim and we want to make a complete record of it. The judge did two things that we believe were erroneous at that point. The judge said, the burden is yours. You show me that DiGio didn't do its pre-suit investigation, contrary to view engineering, and I think it would have taken a reversal of view engineering by this panel in order to sustain Judge Robart's decision. But more than that, the judge committed the second error, and that is, having put the burden on us, having cut off our opportunity to develop a record at trial, he said, and we're not even going to give you discovery. Are you disputing the idea that you all have the burden of proving by clear and convincing evidence that a case is exceptional? Yes, and that's where Judge Robart was wrong. We don't walk away for a moment from our obligation. That is our duty. Audible's duty is to convince the court by clear and convincing evidence that this is an exceptional case. However, what view engineering says, in connection with Rule 11, but it's for functional purposes the same as 285 for today's argument, in view engineering, what this court said was, the burden remains with the plaintiff to show that a pre-suit investigation was done. Why does that make sense? It makes perfect sense because it's only the plaintiff who will know what the plaintiff did before suing. That's not a normal subject of discovery. You don't go to the plaintiff and say, what was your work product? What did your attorneys review? What did your law clerks review? What was done in reviewing the file? That's something that comes at the end of the case, and the reason 285 decisions need some additional discovery at the end of the case is because that information is inherently and solely within the province of the plaintiff who brought the case. Let's play this out in this way. I didn't see any evidence in the record that the... Is it Diego? Digio. Digio. Thank you. Sorry. Digio pointed to that indicated that it reviewed the file before it filed the infringement suit. You are correct, Your Honor. There's nothing in the record that sustains that. Let's assume that we remanded and it went back and you had discovery on the issue and you were able to show, or the court found below, that actually they didn't review the file. They just filed suit. Would you contend that you were entitled to attorney's fees then? Yes, Your Honor. Absolutely. Let's say that we remanded and the discovery showed that they did review the file before they filed suit, and you pointed to a number of red flags that you think were enough to require further investigation. Do you need fact-finding to develop those red flags more, or more red flags, or define more, or do we have the record that we need right now to make a decision as to whether the failure to further investigate based on the red flags would support an award of sanctions? Two answers to that, Your Honor. I think we have in front of you sufficient information, given Digio's approach to this case, where it took a very cavalier approach, put in one two-page declaration in response to our challenge to have them show us what supposedly they've done as a pre-suit investigation. I think this court could actually, rather than simply remanding for discovery purposes, remand with instructions to Judge Robart to award fees, and he would calculate the fees. However, if the court is going to remand with instructions to make a determination again, properly, under the proper legal standard of review engineering, then we would like additional discovery, because we would like an opportunity  We think there are plenty and sufficient red flags, Your Honor, and I'm going to just touch on two of them. There are actually only three documents. I'm really going to beg the court to look at them. But if we found that the red flags you've identified in your briefs did not require further investigation, if we found that as a matter of law, would that be appropriate, or do you need discovery? We would need discovery if the court was inclined to go that way. But here's where I think why the court should not. I need to take just a few minutes to talk about red flags, and unfortunately, I need to start by apologizing. There is an error in our reply brief. It is this error. And the court may want to take a note. In DiGio's response brief at page 38, DiGio argued that the absence from the file history of any documentation proving Edward Chang's death or verifying Oliver Chang's authority to sign for him as executor,  and I'm quoting DiGio's brief, there is, quote, no authority for the proposition that such papers are required, close quote. In our reply brief, we erred by at least superficially agreeing with DiGio that there is no legal authority for that proposition. That's our error. There is legal authority for the proposition. I've already talked to my opposing counsel, Mr. Graham, about it. He's aware of the legal authority. And specifically, here's what I would ask you to take a note of. In the Manual of Patent Examining Procedure, section 409.01 sub b, that's what I'm referring to, it's no longer in existence because it was redacted, abolished, expunged in 2000. So it doesn't exist now, but it existed in 1996 at the time of the forgeries. And what that manual says, which governs the Patent Office's procedures, is this. There are some litzies in here. I'm not going to note them. You'll see the full text, but I need to get through this quickly. Whenever, because of the death of an inventor, the right of applying for and obtaining a patent for an invention devolves upon an executor, proof of authority of such executor should in all cases be made of record in the Patent and Trademark Office by filing in the application or recording in the assignment records a certificate of the clerk of a competent court or the register of wills that his or her appointment is still in full force in effect. Such certificate shall be signed by an officer and authenticated by the seal of the court by which the same was issued." I apologize for not bringing that to the court's attention earlier. As I said before, opposing counsel is aware of it. It's a huge red flag, because what that means is if we take ourselves back 10 years, this is a very big file, if we take ourselves back 10 years plus to 1996, when that 1996 filing was put in place by supposedly Oliver Chang acting as executor for his supposedly dead brother, the Patent Office says you mandatorily had to put proof in of the death in the form of documents from the court where the person died, where the estate would have been governed. But more than that, even if we hadn't finally stumbled upon the MPEP from way back when, that no longer exists, there are two documents I really want this court to pay attention to. It's the Forge Power of Attorney, which is Appendix 273.634 and 635, and the Forge Assignment, particularly the Forge Assignment at Appendix page 408. The reason for that, and this really underlines and summarizes all the red flags, the reason I want the court to concentrate on that is the court is going to see in both of those documents, these are the two forgeries, in both of those documents, just above the forged signature, it's going to find slightly different language in the two documents. I'll first start with the Power of Attorney. Here's what it says, right above that. And I'm quoting paragraph 3. Proof of my slash our authority to act on behalf of the deceased inventor is submitted herewith. Where's that proof? It wasn't in the file history. Digio has never claimed it's in the file history. It doesn't exist. If Digio, Your Honor, had read the file history before it sued us, as it had to do under new engineering, it would have read that line right above the forged signature saying I'm submitting proof with this that I have authority to sign for my dead brother. In the absence of that being in the file, that is an enormous red flag which had to stop Digio dead in its tracks and it would have said, let's get a hold of Cao Xi, also known as Oliver Chang, and see what's going on here. By that time, remember that Microtome had an attorney involved. Digio could have picked up the phone and talked to that attorney and said, what gives? Where's this proof of the death of Edward Chang? We don't see it in the file. Not only is that statement in the power of attorney, it's also in the forged assignment itself. Right above the signature, just above where the date of the signature is handwritten in, is this language in the forged assignment. Proof of authority to act on behalf of the deceased slash incapacitated inventor is submitted herewith. Once again, there's nothing. Putting aside the fact that there was already a huge red flag because that assignment was signed back, the forged assignment was signed in 96, wasn't filed until 2002, a few weeks before the bankruptcy sale, that should have been enough to put Digio on notice. But if, as Digio claims in its brief, which is not substantiated in the declaration, if Digio had looked at the file, it would have seen those two statements saying we're putting into the record proof that I have authority to sign, here's the information which would have comported with MPEP that I read to you a moment ago, there would have been something in the file. In the absence of that, it's just not plausible for Digio to claim that it didn't have a duty to come forward and conduct some investigation to find out what was going on. I'd like to save just a couple of minutes, and so, well, let me just wrap up with one more thought. On the declaration itself, because I know Mr. Graham is a very skilled lawyer and he's going to explain to you why that So I'd just like to take a moment and direct the court's attention to the declaration itself. It's in appendix 926 and 927. It's the third document that I'm going to ask this court, please, to read in addition to the two that I just referenced, the two forgeries. Here's what I realized when I studied that again last night. Digio received notice of a potential bankruptcy sale on August 5, 2002. That's a Sunday. That's in paragraph 2 of Mr. Stewart's declaration. It then had to enter into a non-disclosure agreement with a bankruptcy trustee. Then it ordered from the PTO, supposedly, the files. Digio's in Seattle. PTO's here. It had to order those, and it's not just the one file for the 823 patent. There was a huge portfolio. My guess is it's something like 17 foreign and U.S. applications, some pending, some granted. 17 files. That had to all be copied in the PTO. Those of you who were practicing for the PTO before you went on the bench know that that takes days. Then it had to be, supposedly, I guess, overnighted. They don't say this in their declaration. Overnighted to Seattle. We're up to what now? August 11th? August 12th? They put their bid in on August 12th. What time did they have to do any investigation before they bought this stuff? Very, very little. They bought a pig and a poke. They bought as is. My point is this. When you read the declaration carefully, even most generously for Mr. Graham's plan, the only thing that that declaration talks about is what they did before they bought it. They don't ever talk about doing a pre-suit investigation. As is clear from the chronology I just gave you, that pre-purchase investigation had, basically, minutes to afford to look at a patent prosecution file, even if they had received it. They don't say they or even if they had read it, and they don't say that they read it. I'd like to save a little time. Thank you. Mr. Graham. Please, the Court. There are two issues raised by Audible on this appeal, and on both of those, we have a fundamental difference of opinion about what the standard of review is for this Court. The first issue concerns the denial of a request for attorney's fees under Section 285. Of course, that's reviewed for abuse of discretion, though the Court ultimately didn't reach that because the Court found there was no exceptional case. The review of the factual determination of whether the case is exceptional is reviewed for clear error. In turn, the underlying question of the trial court is one of clear and convincing proof. This first issue is to be reviewed by this Court as one of clear error demonstrated by Audible in the trial court's finding that Audible had not met its burden of proving that there is an exceptional case. Counsel, am I correct that the parties here are in agreement that when you make an as-is purchase of a patent, you have a duty to confirm title before you file suit for infringement of that patent? Not at all, Your Honor. I'm not aware of any such authority. None is cited. No, but I didn't see you taking issue with that at all in your brief. I couldn't pinpoint it to you, Your Honor, but I thought that there was a large section of my brief when I took issue with the heightened scrutiny and duty to investigate the as-is and specifically argue that there wasn't such authority for any proposition to do anything. I think your brief in that discussion was addressed to the duty that may or may not exist with respect to purchase. I didn't see you address it all head-on or even obliquely the discussion in your adversary's brief about what duty you may bear before you file suit based on an as-is purchased patent. That issue was not discussed head-on with respect to case law because, so far as I'm aware, there is no authority on that topic whatsoever. All of the pre-suit investigation authorities, so far as DGO is aware, deals with a different scenario of parties who assert patents in infringement cases without first evaluating whether there is infringement. I'm not aware of a case that has evaluated the proposition of whether a plaintiff has determined whether it in fact owns the patent it's asserted. And in this case... Well, you wouldn't dispute that you bear the duties imposed by Rule 11. Your Honor, here's what I would say about that. I wouldn't dispute that every party before asserts a patent has the same duty that Rule 11 imposes, that you need to have a reasonable basis to believe that you have a good faith chance of prevailing. And owning a patent is part and parcel of that. And to prevail, you'd have to show that you own it with good title. At the time of filing a complaint, the plaintiff would have to have a good faith basis to believe that he in fact did have a good title. And when you purchase a patent as is, does that by itself provide you that good faith basis, or do you need to do a reasonable investigation to confirm that you own good title? I believe, Your Honor, that that alone gives you at least a presumption that you do in fact own what you buy. Well, that you own what you buy. Which is the patent in this case. And so, you're saying that Rule 11 in that context gives you the ability to rely on a presumption when you buy an as is patent, that you own you have good title. In every case, there is a presumption that the patentee, or the plaintiff, has filed with good faith. And it requires something more to controvert that. In this case, clearing convincing proof, in this case. Because this is not Rule 11. This is Section 285. And that's why at the outset I wanted to stress that this has absolutely nothing to do with Rule 11. Which is why in our briefing we so vehemently objected. There's no Rule 11 objection raised below. But, Counsel, can't they by analogy point out the shortcomings of DiGio in a Rule 11 style with regard to an exceptional case? I mean, we have Brooks Furniture Manufacturing versus Dew Taylor, right, which says the case may be deemed exceptional when one party's conduct would violate Rule 11. So how is it beyond the purview of appropriateness for them to at least analogize to Rule 11 for importing legal analysis into the exceptional case area? I mean, I have to say, when you actually ask for attorney's fees in response to the appeal because of your claim that their reference to Rule 11 was inappropriate because nowhere in their brief are they asking for Rule 11 sanctions. So when you reference that, I was really taken aback and I thought, is this one of those best defense is a good offense in trying to distract the court from the real issues? How could you possibly argue that? I mean, nothing of the sort, Your Honor. Rule 11 in its commentary specifically talks about safe harbors, doesn't want parties to willy-nilly lob it about, wants it to be done with a 21-day window to keep it out of the courts if at all possible, and wants parties not to bootstrap their arguments into seeming stronger than they really are by lobbing a Rule 11 charge into them. The case law that is cited by Audible that brings Rule 11 into play and kind of matches it up with Section 285 is one that's a little different from what they characterize. It says the kind of conduct that gives rise to a Rule 11 violation is the kind of conduct that might also view Section 285 as sectional case conduct. It doesn't say, now we get to say, prove Rule 11 under Rule 11's standards of review, and therefore you bootstrap into Section 285, thereby circumventing the clear and convincing burden of proof and the clear error of review, and the burden shifting that Rule 11 might impose. They didn't raise that blow. It's new. It's waived. It's not before the court. It's Section 285. And whether the conduct here is one that proves this case to be exceptional under 285, not whether proof... Do you read their brief? I mean, where in their is a claim under Rule 11? Because I just don't read it that way. And yet your claim that their arguments are basically frivolous such that they would warrant you getting attorney's fees in this appeal would suggest as much. The briefing is replete with references that says DiGio has violated Rule 11. The VIEW Engineering case which counsel led off with says the trial court blow error in not following VIEW Engineering. VIEW Engineering makes no mention of Section 285. The entirety of the case is about Rule 11 and nothing more. That seeks to impose the Rule 11 standard of review. It says the trial court blow error in not shifting the burden to DiGio. Their brief seems very clear that they're appealing a 285 issue. It doesn't seem to me that they're suggesting they're appealing a denial of Rule 11 sanctions. They're appealing a 285 related issue. And... I mean, it just seems like quite a stretch for you to suggest that they can't even, by analogy, talk about Rule 11 cases. That that would amount to something that is so frivolous in this context that you ought to get attorney's fees. If I may, Your Honor, I have no problem with them saying this conduct would have violated Rule 11. Therefore it should violate, it should be a candidate for violating Rule Section 285 so long as it's also clear and convincing. They do more than that. They say the court below erred in not shifting the burden to DiGio as Rule 11 would do. And they make no mention of the clear and convincing burden of proof that Section 285 imposes. It's different burdens of proof. So the conduct is what you have to review. They're not looking at just the conduct. They're looking at Rule 11 case law alone and divorcing, shifting the focus of this court entirely away from 285 without having ever mentioned Rule 11 below. Why can't they argue to us on appeal that we ought to interpret 285 in a manner similar with regard to the burden of proof and the shifting that other courts and this court have interpreted Rule 11? I mean it seems to be a perfectly plausible argument on appeal and it didn't warrant your suggestion that you ought to get sanctions against them basically in this context. So what is the record evidence of your reasonable investigation before you filed suit? The evidence below shows that DiGio had the file history, paid $4 million for these patents, shows that within the file history that DiGio obtained it has the assignments that show that Changs had executed instruments. No suggestion of fraud, simply that one of the inventors had died. No evidence that they were read before you filed a lawsuit. There's nothing specifically in the record. The declaration I was pointing to talks about the pre-purchase, the pre-bankruptcy purchase investigation. But it doesn't say it read them before purchasing? No, Your Honor, it doesn't specifically say that. There's a long window of time between that era of purchasing the patent and this. In between there, there were two other lawsuits against other entities both of which settled without discovery of this issue in which the defendants paid licenses. Others had paid licenses under the patent to DiGio. Moreover, I think the trial court below was persuaded that among these others who bid just like DiGio did, who took licenses, who settled litigations, and Audible itself, who took more than a year of discovery without discovering this issue, and more than two years before pointing to the MPE provision that it points to today, and still didn't discover this issue despite that long passage of time. If the record below requires clear and convincing proof of an exceptional case, it wasn't clear error in the face of all of those facts to find that it wasn't an exceptional case. And that's why the standard of review was important. It may have violated Rule 11 if that had been presented. But that issue was weighed, it wasn't argued below, and it shouldn't be allowed to be argued here. When did DiGio discover the forgery? DiGio discovered it when it attended the deposition of Edward Chang in May toward the close of the discovery. Wait, until you actually physically attended the deposition, you didn't know the guy was alive? I mean, it was scheduled, at that point you didn't have a hint. There was a prior discussion between myself and Mr. Kelber, who attended the deposition, in which I asked Mr. Kelber, are you really going to go forward with this deposition? So far as I know, he's dead. We had tried to contact him after we got the subpoena. No phone, no answer, nothing. No cooperation. And I said, do you really mean Oliver, not Edward? Edward's dead. You're not going to do both, are you? And the answer was, with all due respect, somewhat coy, well, we'll see. And a few days before, I kept pressing, are you going to take it? Are you going to do it? Is it going to happen? Three days before, we finally got the answer yes, it's going to go forward, he's alive. That's the first time... If you were trying to reach him during this period, you know, putting somebody on his doorstep, calling him, I guess you had an address or phone number for him. The only thing that we had was the last known address from the file history. We weren't trying to reach him until the subpoena was issued about three weeks or so before the close of discovery. We had no reason to, by all appearances, he was dead. Everything suggested he was dead. So far as we knew, Oliver also believed that he was dead. They reviewed the file history before filing their answer. Their answer is replete with lengthy and detailed affirmative defenses that come only from having a careful review of the file history. And yet, they didn't see this issue. They didn't raise a red flag with them. It's curious why it somehow should raise an immediate red flag for Digio when it didn't do the same for them. Again, that's another factor in terms of the reasonableness of what's going on. It was enough of an issue to explore your title and the validity of your title to take discovery in this area. That they took that discovery later in the discovery period as opposed to first thing in the discovery period doesn't say that much. Perhaps they thought that you complied with Rule 11 and had actually investigated whether or not you had good title. I couldn't answer that, Your Honor. That would be speculation on my part, whether that occurred. If I may, Your Honor, there's one other... I see I have two minutes remaining. I'd like to discuss the standard of review on the discovery question and also a switch in the issue presented to the court. In Audible's opening brief, the issue is framed as whether the court erred in denying additional discovery. In Audible's reply brief, it's now framed as whether it was an abuse of discretion to dismiss the case under Rule 41 without the additional curative condition of granting additional discovery as a condition of the dismissal. That wasn't requested below and it wasn't in their opening brief and we suggest that it's too late to submit that for the first time in reply. We also note that in our opening brief, we cited the Martel case in the Ninth Circuit, which says that in order to review this on appeal, Audible must make the clearest showing of actual and substantial prejudice along with demonstrating a reasonable probability that the result would be true. The court says that's only for trial continuances. It says that that case doesn't apply here. It's true that in that specific case, it was dealing with a continuance, but that's something of a seminal case within the Ninth Circuit and is cited in additional subsequent cases for this exact scenario of denial of additional discovery after the discovery cutoff. See, for example, Law v. U.S. DOI 342 F. 3rd 1080 for that same proposition. Here, there's no effort to meet that standard. They simply say we were entitled to more discovery to flesh it out. No demonstration. In fact, Your Honor's questions at the outset about what would be different. We already know everything. We already know the worst. In fact, they're presuming that there was no pre-filing investigation, that there was no reasonable effort by DGO. But based on all the other facts before the court, they found that there was no exceptional case, and there would be no reason to gather anything more and find differently. Thank you. Thank you. Mr. Kienel. To answer the panel's question that was directed to Mr. Grant, the reason Audible did not jump on the ownership issue earlier is that there was a clear declarative sentence at the beginning of DGO's complaint saying they were the complete owner of all right, title, and interest. We did trust them on that basic and fundamental issue. We do expect somebody with the financial wherewithal of DIGIO and with accomplished counsel that they would have done the pre-suit investigation. That's not something that we questioned early on. DIGIO's in a different position. They bought as is. They had nothing to rely on. Standard of review. I'm again being accused of ducking the standard of review. I'm not going to duck the standard of review. It's a tough standard. I understand that. Where Judge Robart went wrong is he never even got to the first base correctly. He went into the foul path very early by putting the burden on Audible when the burden of review engineering belonged on DIGIO. Everything else that flowed in Judge Robart's two decisions on 285 is based on that fundamental legal erroneous foundation. He never got to the starting path in the correct way. If you look at page 6 of his December 1 order, you'll see he says, Audible falls well short of proving. Page 9, Audible has adduced no evidence. It wasn't our burden. It was DIGIO's burden. Your Honor, just to conclude, we twice asked for 285 sanctions. DIGIO twice had the opportunity to come forward and say that they did anything as a pre-suit investigation. The only document they ever produced was the two-page declaration which today Mr. Graham candidly admitted doesn't say that there was a review of the patent file before suit. If I heard him right, that was his admission today. Your Honor, under those circumstances, I think the remand to Judge Robart should be with an instruction to award fees under 285 and simply leaving to him the determination of how much those fees should be. DIGIO twice had its chance for its day in court. It acted cavalierly in the face of a direct challenge to review engineering to say that it had done something, lifted some finger, before suing us. Thank you. Thank you. The case is taken under advisement. All rise. The Honorable Court is adjourned until tomorrow morning at 10 o'clock.